[redacted]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VANDA PHARMACEUTICALS INC., Plaintiff, v. TEVA PHARMACEUTICALS USA, INC., Defendant. | **Redacted - Public Version** C.A. No. 23-152-JLH (Consolidated) [redacted] |
| VANDA PHARMACEUTICALS INC., Plaintiff, v. APOTEX INC. and APOTEX CORP., Defendants. | C.A. No. 23-153-JLH (Consolidated) [redacted] |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com

Kaan Ekiner (No. 5607)
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com

[redacted]

OF COUNSEL:
J.C. Rozendaal
Deirdre M. Wells
Sasha S. Rao
Donald R. Banowit
William H. Milliken
Brady P. Gleason
Sterne, Kessler, Goldstein
& Fox, P.L.L.C.
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

*Counsel for Defendant Teva Pharmaceuticals USA, Inc.*

OF COUNSEL:
W. Blake Coblentz
Aaron S. Lukas
COZEN O'CONNOR
2001 M Street, NW, Suite 500
Washington, DC 20036
Tel: (202) 912-4800

Keri L. Schaubert
COZEN O'CONNOR
3 WTC, 175 Greenwich Street, 55th Floor
New York, NY 10007
(212) 883-2258

Madison McNulty
COZEN O'CONNOR
One Liberty Place
1650 Markey Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2000

*Counsel for Defendants Apotex Inc. and Apotex Corp.*

Dated: July 1, 2026

[redacted]

**TABLE OF CONTENTS**


I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................ 1

II. NATURE AND STAGE OF THE PROCEEDINGS ........................................ 2

III. RELEVANT LEGAL STANDARDS ........................................ 3

IV. ARGUMENT ........................................ 4

A. *Hikma* confirms that Vanda's inducement theory fails as a matter of law. ............ 4

B. Vanda's claim for contributory infringement fails as a matter of law because Defendants' products indisputably have substantial non-infringing uses. ........................................ 7

C. Vanda has failed to adduce evidence of direct infringement. ........................ 10

V. CONCLUSION ........................................ 10

[redacted]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Depomed Patent Litig.*,
2016 WL 7163647 (D.N.J. Sept. 30, 2016) ....................4

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006)....................6, 10

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004)....................2, 3, 10

*Genentech, Inc. v. Sandoz Inc.*,
55 F.4th 1368 (Fed. Cir. 2022) ....................10

*Global-Tech Appliances, Inc. v. SEB S. A.*,
563 U.S. 754 (2011)....................3

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026).................... *passim*

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014)....................3

*Metro Goldwyn Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)....................3, 4, 6

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
785 F.3d 625 (Fed. Cir. 2015)....................3, 5

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)....................4

**Statutes**

35 U.S.C. § 271(b) .................... *passim*

35 U.S.C. § 271(c) .................... *passim*

[redacted]

## I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

Pursuant to the Court's orders (C.A. No. 23-152, D.I. 373; C.A. No. 23-153, 307), Defendants Teva Pharmaceuticals U.S.A. Inc., Apotex Inc., and Apotex Corp. submit the following supplemental brief in support of their motion for summary judgment of non-infringement (C.A. No. 23-152, D.I. 297; C.A. No. 23-153, D.I. 250). The Court should grant summary judgment of non-infringement for the reasons set forth in Defendants' summary judgment briefing, Defendants' June 11, 2026 letter concerning *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391 (2026), and the additional reasons below.

A. *Hikma* confirms that Vanda's induced infringement theory under § 271(b) is legally untenable. The Supreme Court has reaffirmed that inducement liability turns on "whether a defendant actively encouraged infringement through its statements, not merely how others may understand those statements." 146 S. Ct. at 1400 n.3. Vanda's inducement theory rests on precisely the approach *Hikma* rejected: Vanda contends that Section 7.3 of Defendants' labels, which on its face does not encourage anyone to do anything, will nonetheless be interpreted by prescribers to encourage the patented method. *Hikma* squarely forecloses that argument.

B. Defendants' products have substantial non-infringing uses, which precludes liability for contributory infringement. Indeed, Vanda's counsel as good as conceded Vanda's contributory infringement theory at the April 14 hearing, *see* Ex. 3 ("Tr.") 54:10–16, 55:18–21 (though Vanda has since attempted to revive it in subsequent letters to the Court, especially now that the *Hikma* writing is on the wall). The reason for that near-concession is obvious. Vanda has struggled mightily—and, Defendants submit, failed—to adduce evidence that tasimelteon has *ever* been used to infringe. So the notion that substantially *all* uses of the drug will infringe is pure fantasy. The Court should grant summary judgment on Vanda's claims under § 271(c).

C. Vanda has failed to adduce evidence of predicate acts of direct infringement, as

[redacted]

required by both §§ 271(b) and (c). The scant evidence it does proffer relates to administration of its own product, Hetlioz; predates the launch of Defendants' products; predates the addition of Section 7.3 to *anyone's* label; and in any event would require far too speculative a chain of inferences to conclude that these claims have ever been practiced. Vanda has not identified a single instance of alleged infringement that is plausibly attributable to *Defendants'* conduct. This failure is fatal to an indirect infringement showing, which requires that a patentee demonstrate that *the defendant's* allegedly wrongful acts led to the identified instances of direct infringement. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004).

## II. NATURE AND STAGE OF THE PROCEEDINGS

In December 2022, Vanda Pharmaceuticals Inc. filed suit against Teva and Apotex in the District of New Jersey alleging infringement of U.S. Patent No. 11,285,129. *See Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, Nos. 22-7528, 22-7529 (D.N.J.). Defendants successfully moved to transfer those actions to this District, and the Court coordinated the Teva and Apotex actions for pretrial purposes. Vanda then filed additional actions asserting U.S. Patent No. 11,918,556 against each Defendant. *See Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, Nos. 24-1345-JLH, 24-1344-JLH (D. Del.). The Court consolidated the '129 and '556 actions against each Defendant. The four cases have since proceeded on a coordinated basis. Trial in the Teva case is currently set for October 26, 2026. Trial in the Apotex case has not yet been scheduled.

On March 9, 2026, Defendants moved for summary judgment of non-infringement of both asserted patents, arguing that (i) Vanda failed to adduce evidence of a predicate act of direct infringement; (ii) Vanda failed to adduce evidence of active inducement; and (iii) Vanda failed to prove that Defendants' products have no substantial non-infringing uses, as required for a claim of contributory infringement. The Court heard argument on April 14, 2026.

[redacted]

On June 4, 2026, the Supreme Court issued its decision in *Hikma* addressing inducement in the Hatch-Waxman context. Consistent with the Court's request at the April 14 hearing (Tr. 146:18–23), Defendants submitted letters explaining that *Hikma* reinforces Defendants' argument that Vanda's infringement theories are legally deficient (C.A. No. 23-152, D.I. 371; C.A. No. 23-153, D.I. 306). Vanda submitted its own letter (C.A. No. 23-152, D.I. 372; C.A. No. 23-153, 305). The Court then issued an order stating that it was "inclined to grant" Defendants' motion and authorizing this supplemental briefing (C.A. No. 23-152, D.I. 373; C.A. No. 23-153, 307).

## III. RELEVANT LEGAL STANDARDS

As the Supreme Court reiterated in *Hikma*, a claim for active inducement of infringement under § 271(b) requires three elements: direct infringement by a third party, *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920–21 (2014); knowledge that "the induced acts constitute patent infringement," *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 766 (2011); and "active steps ... to encourage direct infringement," *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005). Those active steps must involve "purposeful, culpable expression and conduct," *Grokster*, 545 U.S. at 937. The question, therefore, is not whether the purportedly inducing statements can be "underst[oo]d" to induce infringement, but whether they constitute "affirmative steps to bring about the desired result" of infringement. *Hikma*, 146 S. Ct. at 1402 (citing *Global-Tech.*, 563 U.S. at 760). Inducement cannot be premised on "vague" language "combined with speculation about how [others] may act." *Id.* at 1401 (quoting *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 632 (Fed. Cir. 2015)).

To prevail on contributory infringement under § 271(c), a patentee must (as with inducement) prove that a defendant's actions have led to direct infringement. *Dynacore*, 363 F.3d 1272. The patentee must also show that the defendant's product is "especially made or especially adapted for use in an infringement … and not … suitable for substantial noninfringing use." 35

[redacted]

U.S.C. § 271(c); *see In re Depomed Patent Litig.*, 2016 WL 7163647, at *67 (D.N.J. Sept. 30, 2016). A use is "substantial" if it is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). This standard is demanding for a reason: for courts to "imput[e] an intent to infringe" from the mere sale of a product, the product must be "good for nothing else but infringement." *Grokster*, 545 U.S. at 932. "[T]he doctrine absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses, and limits liability to instances of more acute fault than the mere understanding" that the item may be used to infringe. *Id.* at 932–33.

## IV. <u>ARGUMENT</u>

### A. *Hikma* confirms that Vanda's inducement theory fails as a matter of law.

Vanda's inducement theory fails as a matter of law, as shown by a straightforward application of the Supreme Court's reasoning in *Hikma*.

Vanda's asserted patents claim methods of administering tasimelteon. As relevant here, the '129 patent (C.A. No. 23-152, D.I. 309-1)[1] claims require first determining whether a patient is being treated with a beta blocker. If the answer is no, the claims require administering tasimelteon; if the answer is yes, the claims require instructing the patient to stop the beta blocker and subsequently administering tasimelteon. Vanda now concedes that these claims require (i) a determination whether a patient is specifically taking a beta blocker (as opposed to a general determination what medications a patient is on) and (ii) conditioning the subsequent administration of tasimelteon on the result of that determination. Tr. 108:23–109:6. The claimed methods of the '556 patent (D.I. 309-2) similarly require discontinuing a patient's beta blocker before administering tasimelteon.

---

[1] All subsequent citations refer to documents that were commonly filed in both C.A. Nos. 23-152 and 23-153, and for brevity refer only to docket entries in C.A. No. 23-152.

[redacted]

The "main focus" of Vanda's inducement theory, Section 7.3 of Defendants' labels, *see* Tr. 48:22–50:6, states only that "[n]ighttime administration of [beta blockers] may reduce the efficacy of tasimelteon." D.I. 309-3. That statement cannot prove inducement liability under 35 U.S.C. § 271(b). In the Hatch-Waxman context—as the Federal Circuit has held and the Supreme Court has just reinforced—a label must "encourage, recommend, or promote" an infringing use to give rise to liability for inducement. *Takeda*, 785 F.3d at 631; *see Hikma*, 146 S. Ct. at 1400–01. Section 7.3 does none of those things. On its face, it does not instruct cessation of beta blockers. It merely describes a possible interaction, stating that *nighttime* administration of beta blockers (not administration of beta blockers generally) *may* reduce tasimelteon's efficacy. D.I. 309-3. This language does not direct any course of action, much less the specific steps required by the claims. Courts have repeatedly held that such informational disclosures regarding drug interactions do not establish inducement. D.I. 306 ("Defs. Op. Br.") 16–19. *Hikma* now confirms the point beyond doubt. Vanda needs to show "not merely" that Defendants' labels "could be plausibly understood to induce infringement," but that they "constitute affirmative steps to bring about the desired result of infringement." 146 S. Ct. at 1402. Vanda has not made—and cannot make—that showing.

*Hikma* also forecloses Vanda's attempt to skirt its burden to show active inducement by offering an expert to discuss how prescribers might interpret Section 7.3. The Supreme Court made clear that "the key question" is whether the defendant "actively encouraged infringement through its statements," not how third parties might understand them. *Hikma*, 146 S. Ct. at 1400 n.3. Vanda's theory does exactly what *Hikma* forbids. It asks the Court to infer inducement because, according to Vanda, regardless of what Section 7.3 says, prescribers will somehow read it as suggesting an infringing course of action. *See* D.I. 311 ("Vanda Answering Br.") 26. But nothing in Section 7.3 "implicit[ly] or explicit[ly]," *Hikma*, 146 S. Ct. at 1401, directs physicians to discontinue beta blockers or to condition treatment on beta-blocker use. At most, the statement

[redacted]

that nighttime administration "may reduce" efficacy functions as a clinical "disclaimer," *id.* at 1402, not an instruction. That distinction is dispositive. As *Hikma* explains, "roundabout" statements like those in Section 7.3 cannot establish inducement. *Id*. Section 7.3 is thus insufficient as a matter of law to establish either specific intent or the "affirmative steps" required for inducement under § 271(b). *See Grokster*, 545 U.S. at 937; *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

Vanda's reliance on outside-the-label evidence does not cure this defect. Vanda cites a draft FDA guidance document and the UpToDate website as evidence that the label's inducement was "clear to the relevant audience and affirmative." Vanda's June 11 Letter (D.I. 372) at 1 (quoting *Hikma*, 146 S. Ct. at 1401 (modified)). As an initial matter, Defendants did not author, control, or disseminate the FDA guidance or UpToDate materials. So those sources cannot evidence "culpable conduct" by Defendants as a matter of law, nor can they establish that Defendants possess the requisite intent to induce.

Even setting that aside, these materials do not come close to supplying the missing instruction required by the claims. To the contrary, both confirm that the label simply provides information—not an instruction to perform the claimed method. As Vanda acknowledges, the FDA draft guidance (which is about drug labels generally and does not mention tasimelteon) explains only that statements in a label's drug-interactions section describe potential interactions. D.I. 316-1 (Ex. 57). It does not suggest that such statements instruct physicians to take any particular action, much less suggest that the tasimelteon label instructs physicians to condition treatment with tasimelteon on whether a patient is taking beta blockers or to discontinue beta blockers before administering tasimelteon. *See id.* Likewise, UpToDate advises only that physicians should "[c]onsider avoiding nighttime administration of beta-blockers during tasimelteon therapy." D.I. 316-3 (Ex. 60). That guidance addresses concomitant-therapy *timing*, and does not describe, much

[redacted]

less encourage, avoidance of co-administration required by the claims.

Vanda's reliance on a so-called "marketing e-mail" (actually an internal, draft Word document), D.I. 372 at 1, fails for similar reasons. *See* D.I. 329 ("Defs. Reply Br.") 8–9. Even setting aside the fact that there is no evidence this document was ever sent to anyone, it merely parrots the language of the label and so adds nothing to Vanda's inducement case.

Finally, Vanda's arguments about carve-outs, D.I. 372 at 1–2, are non sequiturs. Although *Hikma* involved a carve-out, its reasoning is not limited to that context. The decision reaffirms a broader principle fatal to Vanda's case here: inducement requires "affirmative steps to bring about the desired result" of infringement. *Hikma*, 146 S. Ct. at 1402. And that Defendants did not attempt to carve out Section 7.3 here is irrelevant for a simple reason: as Defendants have explained at length, Section 7.3 *does not encourage infringement*. There would be no reason to carve it out.[2]

**B. Vanda's claim for contributory infringement fails as a matter of law because Defendants' products indisputably have substantial non-infringing uses.**

The Court should additionally grant summary judgment of no contributory infringement because Defendants' tasimelteon products are plainly "suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Vanda has failed to carry its burden to demonstrate otherwise. Vanda has not adduced evidence that would allow a reasonable factfinder to conclude that these patents have *ever* been infringed, *infra* § C; in any event, Vanda cannot possibly prove that substantially *all* uses of tasimelteon infringe when it can hardly muster a showing that *any* of them do.

Vanda as good as conceded at the April 14 hearing that its contributory infringement theory is deficient. When asked to identify evidence supporting contributory infringement more broadly,

[2] Vanda's further statement that "Defendants admit that they intended their products to be as effective as Hetlioz, which would not be possible unless they intended prescribers to avoid coadministration with beta blockers," D.I. 372 at 1, grossly mischaracterizes the cited testimony, which says *nothing whatsoever* about beta blockers.

[redacted]

Vanda emphasized instead that its "main argument" rested on inducement under § 271(b), and admitted that its contributory infringement theory "is certainly not as strong." Tr. 54:2–20. With respect to the '556 patent, Vanda expressly agreed with the Court that Vanda "d[oes]n't have a claim under 271(c)." *Id.* 55:18–21. These admissions reflect the reality that Vanda lacks evidence sufficient to prevail under § 271(c).

Vanda has subsequently attempted to revive its contributory infringement argument by asserting that "virtually all prescribing of generic tasimelteon infringes the '129 patent," leaving no substantial noninfringing uses. D.I. 372 at 2. But that assertion is unsustainable on this record.

Again, as Vanda now concedes, the '129 patent involves a two-step, branching method. A prescriber must first determine whether the patient is taking a beta blocker. Tr. 108:23–25. This determination must be specific to beta blockers; "determining what medications a patient is taking in general … is insufficient." Mora Dep. Tr. (D.I. 332-1), 249:21–250:3; *id.* 249:8–254:11.[3] If the patient is specifically determined to not be taking a beta blocker, the method requires administering tasimelteon *conditioned on that determination*. Tr. 109:1–3; Defs. Reply Br. 2 (citing Mora Dep. Tr., 250:21–253:22; D.I. 152, 62–63). If the patient is taking a beta blocker, the prescriber must instruct the patient to discontinue the beta blocker before administering tasimelteon. Tr. 109:4–6.

Vanda cannot maintain that "virtually all" uses of Defendants' generic products will track this specific method. *Even on Vanda's own account of the evidence*, it has identified only three instances of purported infringement. As Defendants have explained, none of those documents reflect performance of every step of the claimed method. *See* D.I. 306, 10–13. But even if they did, no reasonable jury could conclude that substantially all of the thousands of tasimelteon

[3] Dr. Mora illustrated this point with a colorful analogy: if one is "cooking a dish that has 90 percent peanuts," one would want to ask whether a dinner guest is "allergic to peanuts" specifically, as opposed to "ask[ing] a general question about what your allergies are and have the opportunity [to] miss that allergy." D.I. 332-1, 254:4–9.

[redacted]

prescriptions will result in infringement when Vanda's best efforts have yielded a grand total of three putative infringing acts.

To make matters even worse for Vanda, its own evidence of alleged direct infringement—e.g., adverse event reporting data for Hetlioz—indicates [redacted].[4] Vanda attempts to characterize co-administration of tasimelteon with a beta blocker as "unusual," "occasional," or "aberrant," D.I. 364 at 1, but this is entirely unsupported by the record. Rather, Vanda's own proffered evidence confirms that tasimelteon is routinely used in noninfringing ways, including co-administration with beta blockers. In sum, Vanda's contributory infringement theory is untenable because it cannot identify a single clear instance of infringement, and its own data indicates that dozens of patients have been co-administered tasimelteon with a beta blocker. The Court should therefore grant summary judgment of no contributory infringement.

[4] *See, e.g.*, [redacted]

[redacted]

### C. Vanda has failed to adduce evidence of direct infringement.

Finally, summary judgment of non-infringement under both §§ 271(b) and (c) is independently warranted because Vanda has failed to establish the predicate direct infringement required to sustain any theory of indirect infringement. It is well settled that liability for induced or contributory infringement cannot exist absent proof of direct infringement. *See DSU*, 471 F.3d at 1303; *Genentech, Inc. v. Sandoz Inc.*, 55 F.4th 1368, 1379 (Fed. Cir. 2022). Vanda's evidentiary showing falls far short of this threshold requirement for the reasons Defendants have already explained. *See* D.I. 306, 10–13; D.I. 329, 4–6.

More fundamentally, Vanda's evidence could not form the basis of Defendants' liability for direct infringement even if it were somehow credited because none of the purported instances of direct infringement can be traced back to anything Defendants did or said. Tr. 50:4–6. Vanda's evidence purportedly reflecting performance of the claimed steps consists of an entry in February 2015 adverse event report, a 2015 case management report, an October 2014 email, and a July 2022 report reflecting events from 2018. These events all predate both Defendants' products and Section 7.3 entirely (which was added to the Hetlioz label in 2020).

That temporal disconnect is dispositive. To establish indirect infringement under §§ 271(b) and (c), a patentee must demonstrate not only that direct infringement occurred, but that the defendant's allegedly wrongful act caused that infringement. *Dynacore*, 363 F.3d at 1274. Neither Defendants' labels, nor even Section 7.3 of the *Hetlioz* label, could have caused the prescriber behavior that Vanda identifies in its documentary evidence as purportedly infringing. And, absent evidence of direct infringement resulting from Defendants' conduct, Vanda's indirect infringement theories necessarily fail.

## V. <u>CONCLUSION</u>

The Court should grant Defendants' motion for summary judgment of non-infringement.

[redacted]

Dated: July 1, 2026

Respectfully submitted,

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com

OF COUNSEL:
J.C. Rozendaal
Deirdre M. Wells
Sasha S. Rao
Donald R. Banowit
William H. Milliken
Brady P. Gleason
Sterne, Kessler, Goldstein & Fox, P.L.L.C.
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

*Counsel for Defendant Teva Pharmaceuticals USA, Inc.*

/s/ Kaan Ekiner
Kaan Ekiner (No. 5607)
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com

OF COUNSEL:
W. Blake Coblentz
Aaron S. Lukas
COZEN O'CONNOR
2001 M Street, NW, Suite 500
Washington, DC 20036
Tel: (202) 912-4800

Keri L. Schaubert
COZEN O'CONNOR
3 WTC, 175 Greenwich Street, 55th Floor
New York, NY 10007
(212) 883-2258

Madison McNulty
COZEN O'CONNOR
One Liberty Place
1650 Markey Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2000

*Counsel for Defendants Apotex Inc. and Apotex Corp.*

[redacted]

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, this document was served on HetliozANDA_MWE@mwe.com and on the persons listed below in the manner indicated:

**BY EMAIL**

Daniel M. Silver
Alexandra M. Joyce
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

Ethan H. Townsend
MCDERMOTT WILL & SCHULTE LLP
The Nemours Building
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
(302) 488-3911
ehtownsend@mwe.com

Samoneh Kadivar Schickel
MCDERMOTT WILL & SCHULTE LLP
300 Colorado Street, Suite 2200
Austin, TX 78701
(512) 726-2600
sschickel@mwe.com

Paul W. Hughes
Sarah P. Hogarth
Charles Seidell
Mary Schnoor
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com
shogarth@mwe.com
cseidell@mwe.com
mschnoor@mwe.com

Jason A. Leonard
MCDERMOTT WILL & SCHULTE LLP
One Vanderbilt Avenue
New York, NY 10017-3852
(212) 547-5400
jleonard@mwe.com

Connor S. Romm
Sarah Chapin Columbia
MCDERMOTT WILL & SCHULTE LLP
200 Clarendon Street, Floor 58
Boston, MA 02116
(617) 535-4000
cromm@mwe.com
scolumbia@mwe.com

[redacted]

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Teva Pharmaceuticals USA, Inc.*

# Exhibit 1

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# Exhibit 2

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VANDA PHARMACEUTICALS INC., )
)
Plaintiff, )
) C.A. No. 23-152-JLH
v. ) (Consolidated)
)
TEVA PHARMACEUTICALS USA, INC., )
)
Defendant.)

- - - - - - - - - - - - - - - - -

VANDA PHARMACEUTICALS INC., )
)
Plaintiff, )
) C.A. No. 23-153-JLH
v. ) (Consolidated)
)
APOTEX INC. and APOTEX CORP., )
)
Defendants. )

- - - - - - - - - - - - - - - - -

J. Caleb Boggs Courthouse
844 North King Street
Wilmington, Delaware

Tuesday, April 14, 2026
10:00 a.m.
Dispositive Motions
Daubert Hearing

BEFORE: THE HONORABLE JENNIFER L. HALL, U.S.D.C.J.

APPEARANCES:

McCARTER & ENGLISH LLP
BY: DANIEL M. SILVER, ESQUIRE

-and-

APPEARANCES:

MCDERMOTT WILL & SCHULTE LLP
BY: PAUL W. HUGHS, ESQUIRE
BY: SARAH COLUMBIA, ESQUIRE
BY: JASON A. LEONARD, ESQUIRE
BY: SARAH P. HOGARTH, ESQUIRE
BY: MARY SCHNOOR, ESQUIRE

For the Plaintiff

SHAW KELLER LLP
BY: KAREN E. KELLER, ESQUIRE

-and-

STERNE KESSLER GOLDSTEIN & FOX P.L.L.C.
BY: J.C. ROZENDAAL, ESQUIRE
BY: WILL MILLIKEN, ESQUIRE
BY: DONALD R. BANOWIT, ESQUIRE
BY: BYRON PICKARD, ESQUIRE

For the Teva Defendant

COZEN O'CONNOR
BY: KAAN EKINER, ESQUIRE
BY: AARON S. LUKAS, ESQUIRE
BY: W. BLAKE COBLENTZ, ESQUIRE

For the Apotex Defendants

09:50:17
09:50:17 *** PROCEEDINGS ***

10:09:07 COURTROOM DEPUTY: All rise. Court is now in
10:09:07 session. The Honorable Jennifer L. Hall presiding.
10:09:07 THE COURT: Please be seated.
10:09:10 All right. We're here for some hearings in some
10:09:15 related cases. This is *Vanda vs. Teva* at 23-152 and *Vanda*
10:09:21 *vs. Apotex* at 23-153.
10:09:23 Let's go ahead and put our appearances on the

just haven't addressed in their motion for summary judgment on infringement. So, again, we think looking at all the evidence, they haven't met the standard of there's no issue of genuine -- no genuine issue of material fact in dispute. Here, we certainly dispute their reading of all of this evidence. And I don't think they've shown, other than attorney argument, that that's the case.

Just quickly on specific intent. Of course, if this were an ANDA case and we were looking at the label and looking to see if that was an instruction, the label language itself and the physician's understanding of that label, as provided by expert testimony, would be more than sufficient to show specific intent. They raise the issue of non-infringing alternatives or things that may go to that.

But, again, that's an issue for the jury. It's a dispute of material fact as to whether those are substantial non-infringing alternatives, things of that nature. They certainly haven't shown there's no dispute over that issue.

THE COURT: No. I just want to be -- and I apologize if I already asked this, but I want to be very clear for the record. Your evidence of encouraging infringement actions by them, the Defendants in this case of encouraging infringement is the label. And what else?

MR. LEONARD: It certainly is the label, and we

think that's the main focus of the inducement case. There's other evidence. They had mentioned some internal marketing materials that we also think showed their understanding of what they were instructing in relation to physicians to do --

THE COURT: Okay. So but is there evidence that those internal marketing materials were ever used?

MR. LEONARD: I don't believe there's evidence it was ever used, but the real issue is what is their intention --

THE COURT: Their understanding.

MR. LEONARD: -- that shows their understanding.

THE COURT: Understood. But that's still in terms of what actually is put out into the world. We've got the label.

And anything else?

MR. LEONARD: It's the label. There's some of that marketing material. There's evidence.

THE COURT: Well, the marketing material wasn't put out into the world. We just talked about that.

What else?

MR. LEONARD: There's also testimony of their corporate witnesses that say how they intended the products to be used.

THE COURT: That's not putting it out into the

world. What else?

MR. LEONARD: The main evidence here is the label.

THE COURT: The label. It's the only evidence.

MR. LEONARD: It's the evidence that we're putting forward, yes.

Okay. And certainly for summary judgment, Your Honor, we think that's more than sufficient under the case law to show specific intent.

THE COURT: All right. Thank you very much.

MR. LEONARD: Thank you.

THE COURT: If my tone sounds frustrated, it's not directed at anyone in the courtroom. It's just me trying to understand. And that when I'm trying to understand, I figure I must be confused. And so that's why I'm frustrated with myself, not with counsel. I hope that comes across.

MR. ROZENDAAL: So, Your Honor, again, very briefly. So the label, I think we now -- it's clear to everyone that the label is the name of the game here. And, again, I don't think there's any reading of the label where those words can be construed as an affirmative instruction to carry out the specific steps of the method.

What I hear counsel saying is that, you know, physicians, clinicians confronted with that, one of their

shows, that there are substantial non-infringing uses.

THE COURT: So what is your evidence that there -- well, what is the evidence that there are not -- tell me about the -- tell me about the evidence on each side for contributory infringement. I really don't understand the positions.

MR. LEONARD: So I think, because I know we've used a lot of time on this, obviously --

THE COURT: Yeah. We'll give you more time.

MR. LEONARD: -- our main argument is 271(b).

THE COURT: Main argument is 271(b).

MR. LEONARD: Yeah. For 271(c), we would have to show that. And, again, I think there's issues of fact there, but I certainly agree with Your Honor that there may be evidence that shows that. And, therefore, that claim is certainly not as strong.

But certainly for summary judgment, they haven't shown that we've agreed that they're substantial non-infringing uses. And so at least for that issue today, we don't think they've shown it.

THE COURT: Okay. So you are taking -- but you are -- you want to preserve your position that any administration of tasimelteon is infringing. And that's what I hear you saying, even though we just established that's not what your position is.

MR. LEONARD: Our position is, at least for inducement, that the physicians that are doing it properly and following their instruction --

THE COURT: Right.

MR. LEONARD: -- would be induced to infringe. There may be those instances -- and I think it's a fact issue whether there's substantial use that way that would prevent a finding of contributory infringement.

THE COURT: All right. Thank you.

Let me hear again from defense counsel. Talk to me about 271(c).

MR. ROZENDAAL: Okay. So I think for the '556 patent, it's easy because that requires the patient to be taking a beta blocker.

THE COURT: Clearly, that's -- put that one away.

MR. ROZENDAAL: Okay.

THE COURT: Oh, no. Let me just hear from -- let's just agree on the record. '556 patent, you don't have a claim under 271(c). You couldn't possibly.

MR. LEONARD: No.

THE COURT: Okay. Got it.

MR. ROZENDAAL: All right. So for '129, there are at least two ways in which the patent could be used non-infringing. If we focus on sort of the second half

say it doesn't say all. Well, first of all, it does. "Prescribers would therefore determine, for all their non-24 patients seeking treatment with Hetlioz, whether they are taking beta blockers before administering tasimelteon."

And then in Paragraph 141, which is a buildup to -- you know, builds on the paragraphs that come before it, "In sum, prescribers," those same prescribers "would instruct the patient who is taking a beta blocker to cease treatment with beta blockers prior to beginning administration of tasimelteon based on the instructions provided in the label."

Okay. So our theory of the case, Your Honor, and I realize that there is vehement disagreement about it, but it doesn't mean there aren't disputes of fact. Our theory of the case through the opinions of Dr. Mora is that doctors read labels. Doctors look at labels. Doctors prescribe in accordance with labels. Doctors would look at this label and understand it to instruct them to practice the method, and doctors would do so faithfully.

So every time a patient comes in with non-24, if the doctor is considering putting them on tasimelteon, the doctor will say, Are you taking a beta blocker? We've been clear. We've been clear on that today. The determining step requires specifically determining whether the patient's being treated with a beta blocker. And depending on the

answer, it will dictate the treatment. The doctor may, if the patient's not taking a beta blocker, go down one branch of the claimed method, which is to prescribe tasimelteon. If the patient is taking a beta blocker, the doctor will instruct the patient to come off the beta blocker and then go down the other branch of the method.

And so that's why we say every prescription for tasimelteon practices the claimed invention. And there is record evidence to that. And I'd like to thank Mr. Milliken for pointing that out to us, because that's the universe in which we're operating.

Now, I realize there is disagreement, but when you get to something like chastising Dr. Vellturo for failing to apportion the lost profits, they're asking you to ignore our evidence and credit theirs. And by that, what I mean is we say it's a hundred percent. And under *Mentor Graphics* and *WesternGeco*, satisfaction of the *Panduit* factors relieves you from having to do further apportionment.

And we point to AstraZeneca as an example. Here, you know, they can sell as much tasimelteon as they want. But if no one can actually prescribe it because they can't follow the method that is patented that we're talking about here today, what are they going to do with it? I think Mr. Banowit or Mr. Rozendaal said it can't be a

THE COURT: I apologize for the disruption.

So I would just say that, Mr. Silver and Ms. Keller, just feel free to just call over or just shoot informal emails to Mr. Koehler. And if needed, I can get you both on the phone and we can just walk through my calendar and figure out what makes the most sense, trying to be as least disruptive as possible.

MR. SILVER: Thank you, Your Honor.

THE COURT: All right. Anything else?

MR. ROZENDAAL: I'm sure I speak for everyone, Your Honor, when I say thank you for taking time to get through all the issues today.

THE COURT: Of course.

MR. ROZENDAAL: I know we were originally scheduled for 45 minutes a side, and that would have been very tight.

THE COURT: No. It's my pleasure.

Oh, there's one other thing I did want to tell you before I forget, and it will just save me a step later. If the parties -- after *Amarin vs. Hikma* comes out, if the parties could, within seven days, just send me -- each side can send me a two-page letter just saying what, if any, bearing it has on this case.

I recognize that it's a carve-out case. I just have the suspicion that both sides are going to have