**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VANDA PHARMACEUTICALS INC.,<br><br>Plaintiff,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>Defendant. | C.A. No. 23-152-JLH<br>(Consolidated)<br><br>[redacted] |
| VANDA PHARMACEUTICALS INC.,<br><br>Plaintiff,<br><br>v.<br><br>APOTEX INC. and APOTEX CORP.,<br><br>Defendants. | PUBLIC VERSION FILED: July 22, 2026<br><br>C.A. No. 23-153-JLH |

**PLAINTIFF'S SUPPLEMENTAL RESPONSE BRIEF IN OPPOSITION TO**
**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT</u>**


*Of Counsel:*

Paul W. Hughes
Sarah P. Hogarth
Mary H. Schnoor
McDermott Will & Schulte LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000

Jason A. Leonard
McDermott Will & Schulte LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 547-5400

Samoneh Schickel
McDermott Will & Schulte LLP
300 Colorado Street, Suite 2200
Austin, TX 78701
(512) 726-2600

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Counsel for Plaintiff*
*Vanda Pharmaceuticals Inc.*


Dated: July 16, 2026

**TABLE OF CONTENTS**


Introduction and Summary of Argument ........ 1

Argument ........ 2

I. A reasonable jury could find that Defendants intend to induce infringement. ........ 3

II. A reasonable jury could find Defendants liable for contributory infringement of the ’129 patent. ........ 7

III. A reasonable jury could find Defendants liable for infringement under 271(e)(2)(A). ........ 9

IV. A reasonable jury could find that Defendants caused direct infringement. ........ 10

Conclusion ........ 10

## TABLE OF AUTHORITIES

**Cases**

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004)....................10

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
435 F. App'x 917 (Fed. Cir. 2011)....................8

*Forest Lab'ys Holdings Ltd. v. Mylan Inc.*,
206 F. Supp. 3d 957 (D. Del. 2016)....................7, 8

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010)....................8

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026)....................1, 2, 3, 5, 6

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010)....................8

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
607 F. Supp. 3d 464 (D. Del. 2022),....................10

*MGM Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)....................4, 5, 6

*Symantec Corp. v. Computer Assocs. Int'l*,
522 F.3d 1279 (Fed. Cir. 2008)....................10

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
785 F.3d 625 (Fed. Cir. 2015)....................3

*Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd.*,
887 F.3d 1117 (Fed. Cir. 2018)....................3

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)....................7

*Young v. Martin*,
801 F.3d 172 (3d Cir. 2015)....................1

**Statutes**

35 U.S.C.

§ 271(b)....................1

§ 271(c)....................1, 2, 7

§ 271(e)(2)(A)....................1, 2, 9

## INTRODUCTION AND SUMMARY OF ARGUMENT

Vanda's patented methods originated with its observation that not everyone with Non-24 responded to Hetlioz®—and specifically, its discovery that individuals who were coadministered beta blockers did not entrain. Vanda then developed the patented methods. Its Hetlioz® label—which Defendants copied in relevant part—tells prescribers to follow the patented methods. It does so by warning of the clinically significant reduction in efficacy from coadministration with beta blockers—a warning that tells prescribers to discontinue (or instruct discontinuation of) beta blockers before administering tasimelteon. External evidence confirming that this affirmative label statement clearly encourages prescribers to follow the patented method includes UpToDate, the trusted and widely used prescriber reference. Ex. 60 & 61 (UpToDate considers the label to call for "therapy modification" for patients taking beta blockers (Risk Rating D), not just monitoring (Risk Rating C)). Unsurprisingly so: Non-24 is a rare disorder for which tasimelteon is the only FDA-approved treatment. Vanda's Hetlioz® label—again copied by Defendants—warns that efficacy may take weeks or months to begin due to individual circadian differences. Ex. 26 & 27 (Section 2.2). In this context, instructions on how to improve efficacy carry special weight.

Through fact and expert discovery, Vanda has adduced evidence that Defendants infringe under 35 U.S.C. §§ 271(b), (c), and (e)(2)(A). Drawing all reasonable inferences in Vanda's favor, "an issue of material fact remains … for the trier of fact" on each of these three theories of infringement. *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015).

With respect to inducement under 271(b), a reasonable jury could find that Defendants intend to induce prescribers of their generic tasimelteon product to infringe Vanda's asserted patents. Defendants have taken active steps to encourage direct infringement by marketing products expressly intended for the effective treatment of Non-24 with labels that "*affirmative*[*ly*]" (*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1402 (2026)) instruct prescribers on

a clinically significant drug interaction bearing on efficacy. On this record, a reasonable jury could find that instruction "clear[ly]" (*id.* at 1401)—indeed, unmistakably—encourages prescribers to determine whether a patient is taking a beta blocker and, if so, discontinue (or instruct discontinuation of) the beta blocker before administering tasimelteon, thereby infringing the methods.

With respect to contributory infringement under 271(c), a reasonable jury could find that there are no substantial uses of Defendants' products that do not infringe the '129 patent and that their products are specially adapted for an infringing use. That is because the record in this case supports a finding that essentially all prescribing of generic tasimelteon infringes the '129 patent.

With respect to infringement under 271(e)(2)(A), for the same reasons a jury could reasonably find that Defendants have infringed—including label language, external sources confirming that the label's inducement was "clear to the relevant audience and affirmative" (*Hikma*, 146 S. Ct. at 1401 (cleaned up)), Dr. Mora's expert testimony, and Defendants' experts' admissions—it could reasonably infer that infringement likely will occur in the future.

Because a reasonable jury could find infringement on this record, the Court should deny Defendants' motion for summary judgment. *Hikma* does not change that result. It concerned a theory that a "skinny" label—a label that deliberately did *not* reference the excluded patented indication—nonetheless plausibly induced infringement based on a series of vague inferences. Here, Defendants' labels make an affirmative statement, Section 7.3, that clearly encourages prescribers to avoid coadministration with beta-blockers. Defendants may dispute before a jury whether Section 7.3 is sufficiently "clear," but a genuine factual dispute precludes summary judgment.

## ARGUMENT

Vanda has adduced evidence showing that prescribers infringe the patented methods—and that Defendants' labels affirmatively encourage this—to avoid tasimelteon's reduced efficacy when coadministered with beta blockers. Defendants' motion—and their contention that *Hikma*

"squarely forecloses Vanda's infringement argument" (D.I. 371 at 2; *see also* D.I. 374 at 1)—improperly ask the Court to weigh the evidence and resolve disputed questions.

## I. A reasonable jury could find that Defendants intend to induce infringement.

**A.** Defendants each market their tasimelteon product to effectively treat Non-24. Ex. 26 & 27 (Section 1.1); Ex. G at 49:21-50:9; Ex. 55 at 79:12-15, 109:22-110:4. Section 7.3 of the label affirmatively states that coadministration with beta blockers "may reduce the efficacy of tasimelteon." Ex. 26 & 27. That statement clearly encourages prescribers—who undisputedly are likewise seeking efficacy for their patients—to avoid coadministration, which can only be achieved by following the patented method. Before launching their products, Defendants knew about the '129 patent (Ex. 19 & 20) yet did not seek to carve out Section 7.3 despite carving out other parts of the label to exclude a second indication (Ex. 9 at 46:23-49:12; Ex. 13 at 41:4-22, 74:5-75:24; Ex. 16 at 74:14-75:14). Because a reasonable jury could find that Defendants engaged in "active inducement" (*Hikma*, 146 S. Ct. at 1401), a genuine dispute of material fact precludes summary judgment. *See Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1130-1132 (Fed. Cir. 2018) (treating as question of fact whether label statements sufficiently "recommend[] performance" of the patented method to support induced infringement).[1]

Evidence that Section 7.3 clearly encourages prescribers to follow the method includes:

***The label***. Defendants' tasimelteon products "are indicated for the treatment of Non-24." Ex. 26 & 27 (Section 1.1). Their labels instruct that "[t]he recommended dosage … is 20 mg one hour before bedtime" (the same dosage and timing as in the patented methods) and warn that "[b]ecause of individual differences in circadian rhythms, drug effect may not occur for weeks or

[1] The Federal Circuit in *Vanda* applied the standard for inducement through a generic pharmaceutical label stated in *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 631-632 (Fed. Cir. 2015), which the Supreme Court expressly approved in *Hikma* (146 S. Ct. at 1401).

months." Ex. 26 & 27 (Section 2.2). Within Section 7 ("Drug Interactions"), the labels also instruct that beta blockers "may reduce the efficacy of" tasimelteon. Ex. 26 & 27 (Section 7.3).

***External evidence of the label's meaning to the relevant audience***. FDA guidance confirms that Section 7.3 "communicat[es] … a clinically-significant [drug interaction]." Ex. 57 at 0844546, 0844549-50. And UpToDate, a leading peer-reviewed prescriber reference (*see* Ex. 51 at 125:12-15, 129:1-9), interprets the label to instruct "[t]herapy [m]odification" for patients taking beta blockers, not simply monitoring. Ex. 60 & 61. In other words, when tasimelteon is prescribed, Section 7.3 affirmatively tells prescribers to avoid coadministration with beta blockers—that is, to "[m]odif[y]" the patient's "[t]herapy" by discontinuing the beta blocker in favor of an alternative that would not reduce the efficacy of tasimelteon. This is highly probative evidence that Defendants' labels clearly encourage the relevant audience to follow the patented method: discontinue beta blockers before administering tasimelteon. Defendants (at 6) contend that this evidence could be understood differently—but that is an argument for a jury. Defendants also (at 6) object that they did not author or disseminate these materials, asserting (without legal support) that this evidence thus "cannot evidence 'culpable conduct' by Defendants as a matter of law." Defendants miss the point: These sources are evidence of what they clearly conveyed to the relevant audience by affirmatively placing the language *on their labels* for distribution with their generic products—the "culpable expression" here. *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005).[2]

***Defendants' own testimony***. Defendants admit they intend their products to be as effective as Hetlioz®. Ex. G at 49:21-50:9; Ex. 55 at 79:12-15, 109:22-110:4. They also admit they expect prescribers to follow instructions on their labels. Ex. 54 at 36:20-37:12; Ex. 55 at 100:15-24.

---

[2] Teva's marketing email additionally shows Teva's understanding of what its label encourages: before starting tasimelteon, a prescriber needs to know if a patient is taking beta blockers. Ex. 56.

***Expert opinions***. Dr. Mora, whose testimony Defendants have not sought to exclude, opines on Section 7.3's clarity in encouraging prescribers to follow the patented method and explains why following the patented method is the *only* way to avoid coadministration and its associated reduction in efficacy. Ex. 39 ¶¶ 19-21, 110-111, 120-122, 130-141. Dr. Mora further opines, among other things, that labels are written for prescribers, who read them carefully, especially for drug interactions for drugs treating rare conditions. Ex. 39 ¶¶ 78-81, 109. Defendants' experts also testified that prescribers always evaluate what other medications a patient is taking—including beta blockers—before administering a new medication (Ex. 51 at 257:14-19; Ex. 50 at 36:10-38:9), and that prescribers use information in a label's drug interactions section to "assess[] and determin[e]" whether a patient "should … use … two [drugs] together." Ex. 51 at 146:15-147:6.

**B.** Defendants overread *Hikma* by contending that it "squarely forecloses" Vanda's inducement theory. D.I. 374 at 1. In Defendants' telling, *Hikma* demands that a label spell out the precise contours of a patented method. But the Court specifically rejected an argument "that active inducement must be 'express.'" 146 S. Ct. at 1401. As the Court explained, that position cannot be squared with the principle that "[a] defendant can achieve active inducement through implicit encouragement," so long as the "inducement [is] 'clear' to the relevant audience and 'affirmative.'" *Id.* (quoting *Grokster*, 545 U.S. at 937). Because Section 7.3 provides, at a minimum, such implicit encouragement, Vanda's inducement theory is consistent with *Hikma*'s articulation of the legal standard. To hold otherwise would erroneously demand express encouragement.

The theory the Court rejected in *Hikma*, moreover, was nothing like Vanda's theory here.

***First***, the defendant in *Hikma* had carved out the patented method of use, while Defendants here included label language affirmatively instructing the patented method. The patented method in *Hikma* was for an indication that Hikma had affirmatively carved *out* from its label: reducing

cardiovascular risk in hypertriglyceridemia patients who already take statins. 146 S. Ct. at 1398. Hikma's "skinny" label thus stated that the product was indicated only for a different use. *Id.* By contrast, the patented methods here are methods for effectively treating Non-24, the same condition (indeed the only condition) for which generic tasimelteon is indicated, by addressing tasimelteon's interaction with beta blockers. Defendants affirmatively placed on their labels—and undisputedly did not try to carve out—language that instructs on the patented method. Ex. 9 at 47:19-49:12; Ex. 13 at 41:4-22, 74:5-75:24.

***Second***, the plaintiff in *Hikma* was seeking to plead around the lack of the sort of affirmative label instruction that Sections 7.3 and 2.2 provide here by contending that "it need not do more than 'allege … a plausible chain of events through which statements made by [the defendant] could lead a healthcare provider … to prescribe or dispense [the defendant's] drug to reduce a patient's cardiovascular risk.'" 146 S. Ct. at 1400. Vanda argues no such thing (*see* D.I. 372 at 1), because from Vanda's evidence, a reasonable jury could conclude that Defendants "actively encouraged infringement through … statements" in their labels. 146 S. Ct. at 1400 n.3.

Defendants wrongly assert that Vanda's theory is that a "prescriber might interpret Defendants' labels as suggesting an infringing course of action." D.I. 371 at 2 & n.1. References to how prescribers understand the label go directly to whether the label's inducement is "'clear' to the relevant audience." *Hikma*, 146 S. Ct. at 1401 (quoting *Grokster*, 545 U.S. at 937). Expert evidence helps non-doctors understand what a label clearly conveys to the relevant audience (prescribers) when, as here, that is disputed. Such evidence cannot be categorically disregarded as supporting only what prescribers "merely … *may* understand." *Id.* at 1400 n.3 (emphasis added).

***Third***, *Hikma*'s insufficient allegations contrast starkly with the developed record here. The plaintiff in *Hikma* alleged only that: (1) the defendant's label included "information about a

clinical study involving patients taking statins," although the clinical study was for patients suffering from the non-patented indication (146 S. Ct. at 1401 & n.4); (2) the defendant's prelaunch press releases described its product as the "generic equivalent of Vascepa," the brand-name drug approved for the patented indication, while failing to mention that the defendant's product's approved use was limited to the non-patented indication (*id.* at 1401-1402); and (3) the label's patient information leaflet identifies potential side effects for people with cardiovascular disease and notes that medication is sometimes prescribed for uses other than those specifically intended (*id.* at 1402). Again, the defendant had carved out the patented use. Here, by contrast, the record includes not only the labels but also external references and expert testimony. From this, a reasonable jury could conclude that Section 7.3 clearly warns prescribers to avoid coadministration—that is, it encourages them to practice the patented method, lest the tasimelteon be ineffective. This is not mere attorney argument: ***external authorities validate this reading***. *See supra* at 4.

## II. A reasonable jury could find Defendants liable for contributory infringement of the '129 patent.

Separately, Vanda has adduced evidence from which a reasonable jury could conclude that Defendants are liable for contributory infringement of the '129 patent. A reasonable jury could find that Defendants' products are "especially made or especially adapted for use in … infringement … and not … suitable for substantial noninfringing use." 35 U.S.C. § 271(c). "[N]oninfringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). If "there is a common use that neither infringes nor requires infringement," then that use is substantial. *Id.* at 1328 n.1. For pharmaceuticals, "uses that could not be marketed or promoted by the company [consistent with the approved label] cannot be considered a substantial non-infringing use." *Forest Lab'ys Holdings Ltd. v. Mylan Inc.*, 206 F. Supp. 3d 957, 978-979 (D. Del. 2016)

(citing *Eli Lilly & Co. v. Actavis Elizabeth LLC*, 435 F. App'x 917, 927 (Fed. Cir. 2011)).

Here, the record includes: (1) Defendants' labels (Ex. 26 & 27), which clearly warn that coadministration with beta blockers may reduce efficacy; (2) FDA's guidance regarding drug labeling (Ex. 57), which confirms that the label statement reflects a "clinically significant" drug interaction; (3) Dr. Mora's expert opinions about how prescribers uniformly respond to that label statement (Ex. 39 ¶¶ 19-21, 30, 80); and (4) Defendants' experts' admissions that prescribers always evaluate what other medications a patient is taking before administering a new medication (Ex. 51 at 257:14-19; Ex. 50 at 36:10-38:9). A reasonable jury could conclude from this evidence that prescribers always, or nearly always, follow the label by determining whether a patient is taking a beta blocker, and then following one or the other branch of the patented '129 method. A reasonable jury could further conclude that the possibility of a prescriber *ignoring* the label's warning against beta-blocker coadministration would be a departure from the product's instructed and expected use. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330-1331 (Fed. Cir. 2010) (the fact that a user "can turn off the infringing features" does not mean there are substantial noninfringing uses); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 840, 851 (Fed. Cir. 2010) (upholding finding of contributory infringement where, although there was evidence of noninfringing uses, jury also "heard ample testimony that the noninfringing, binary file format was not a practical or worthwhile use for the … community[] for which the [product] was designed and marketed").

The record in this case is comparable to that in *Forest Laboratories*, where the court found contributory infringement after a bench trial. *See Forest Lab'ys*, 206 F. Supp. 3d at 979. There, the patentee claimed that a generic manufacturer was liable for contributory infringement of its patent for a method of treating fibromyalgia with "both monotherapy and combination therapy … so long as the other drug used in combination [wa]s not phenylalanine, tyrosine, or tryptophan." *Id.* at 975.

The court rejected defendants' argument that "they do not contribute to the infringement of the asserted claims because their products can be used in combination with phenylalanine, tyrosine, or tryptophan," finding that "such use would be off-label" and, in fact, "defendants' labels actually warn[ed] against using [the drug] with phenylalanine, tyrosine, or tryptophan." *Id.* at 975, 979.

Defendants contend that Hetlioz® adverse event reports documenting instances in which patients have been treated with tasimelteon while continuing beta-blocker therapy "confirm[] that tasimelteon is routinely used in noninfringing ways." D.I. 374 at 9. But whether that evidence amounts to anything more than "unusual" or "aberrant" uses of tasimelteon—considering the record as a whole, including other adverse event reports showing prescribers *following* the method—is a question for the jury. A reasonable jury could view the coadministration adverse event reports, which by and large report a *lack of efficacy* (*see* D.I. 374 Ex. 1), as instances of irregular prescribing, not as evidence of what prescribers routinely do. Moreover, each of these uses occurred before Section 7.3 was added to the label.[3] Defendants cannot point to any evidence of coadministration by prescribers using Defendants' labels, which have always included Section 7.3. Ex. 26 & 27.

**III. A reasonable jury could find Defendants liable for infringement under 271(e)(2)(A).**

A manufacturer may infringe by filing an ANDA for a drug that would infringe a patent. 35 U.S.C. § 271(e)(2)(A). Defendants do not dispute that if a reasonable jury could find that they infringed the '129 patent, then it could also find 271(e)(2)(A) infringement. *Compare* D.I. 311 at 30-31, *with* D.I. 329 (not responding to this argument); D.I. 374 (same).[4]

---

[3] In 2020, FDA rephrased the relevant beta-blocker language and moved it from Section 14 (Clinical Studies) to Section 7 (Drug Interactions)—thereby making it *more* conspicuous. Ex. 28 at -809701, -809710; Ex. 71; Ex. 39 ¶ 108.

[4] Teva moved to dismiss Vanda's 271(e)(2)(A) claim only with respect to the '556 patent. C.A. No. 24-1345-JLH, D.I. 11; D.I. 186.

**IV. A reasonable jury could find that Defendants caused direct infringement.**

Vanda explained how its evidence shows that prescribers directly infringe. D.I. 311 at 4-25. Defendants' contentions to the contrary lack merit. Vanda's position on infringement of the "determine-dose" branch is consistent with Dr. Mora's opinions. *Contra* D.I. 329 at 1-3. As Dr. Mora opined (Ex. 39 ¶¶ 19, 121-122), and Defendants' experts do not dispute (Ex. 51 at 146:15-147:6, 257:14-19; Ex. 50 at 36:10-38:9), prescribers *always* evaluate what other medications a patient is taking—including beta blockers—before administering tasimelteon. The "determine-dose" branch is practiced "if a patient is determined to be on beta blockers, and then a prescriber subsequently instructs [the] patient to discontinue treatment with the beta blockers." Ex. 39 ¶ 130. And Defendants' objections to Vanda's evidence of infringement of the "determine-discontinue-dose" branch (D.I. 329 at 3-6) are arguments for the jury, not grounds for summary judgment.

Defendants also argue that evidence predating their products and Section 7.3 cannot be evidence that they caused infringement. D.I. 374 at 10. Not so. A patentee may prevail when it "produce[s] sufficient circumstantial evidence of direct infringement … even though [it] has not produced evidence that any particular customer has directly infringed." *Symantec Corp. v. Computer Assocs. Int'l*, 522 F.3d 1279, 1292-1293 (Fed. Cir. 2008) (vacating summary judgment on noninfringement); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 497 (D. Del. 2022), *aff'd*, 136 F.4th 1354 (Fed. Cir. 2025). A jury could infer that prescribers follow the equivalent (or stronger) relevant language in Defendants' labels (*see supra* at 9 n.3) the same as they did the earlier Hetlioz® label—and thus find that their label statements caused (and will cause) infringement "across the entire category" of generic tasimelteon prescribers. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004).

**CONCLUSION**

The Court should deny Defendants' motion for summary judgment of non-infringement.

Dated: July 16, 2026

Respectfully submitted,

MCCARTER & ENGLISH, LLP

/s/ *Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Counsel for Plaintiff*
*Vanda Pharmaceuticals Inc.*

*Of Counsel:*

Paul W. Hughes
Sarah P. Hogarth
Mary H. Schnoor
McDermott Will & Schulte LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000

Jason A. Leonard
McDermott Will & Schulte LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 547-5400

Samoneh Schickel
McDermott Will & Schulte LLP
300 Colorado Street, Suite 2200
Austin, TX 78701
(512) 726-2600

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on July 16, 2026 on the following counsel in the manner indicated:

**VIA EMAIL:**

John W. Shaw
Karen E. Keller
Nathan R. Hoeschen
I.M. Pei Building
1105 North Market Street, 12th Flr.
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com

J.C. Rozendaal
Deirdre M. Wells
Sasha S. Rao
Donald R. Banowit
William H. Milliken
Brady P. Gleason
STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C.
1101 K Street, NW, 10th Flr.
Washington, DC 20005
(202) 371-2600
jcrozendaal@sternekessler.com
dwells@sternekessler.com
srao@sternekessler.com
dbanowit@sternekessler.com
wmilliken@sternekessler.com
bgleason@sternekessler.com

*Attorneys for Defendant Teva Pharmaceuticals USA Inc.*

**VIA EMAIL:**

Kaan Ekiner
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com

W. Blake Coblentz
Aaron S. Lukas
Kerry B. McTigue
COZEN O'CONNOR
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 912-4800

Keri L. Schaubert
COZEN O'CONNOR
3 WTC, 175 Greenwich Steet, 55th Flr
New York, NY 10007
(212) 509-9400

Michael Pomeroy
COZEN O'CONNOR
1717 Main Street, Suite 3100
Dallas, TX 75201
(214) 462-3000

Madison McNulty
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2000

*Attorneys for Defendants Apotex Inc. and Apotex Corp.*

/s/ *Daniel M. Silver*
Daniel M. Silver (#4758)